[L. A. No. 1123.   In Bank.—September 2, 1904.]

MONTECITO VALLEY WATER COMPANY, Appellant and Respondent, v. CITY OF SANTA BARBARA et al., Respondents and Appellants; and CHARLES F. EATON et al., Respondents.

WATER-RIGHTS—SURFACE FLOW OF STREAM—SUBTERRANEAN DIVERSION. —One who has no legal right to the surface flow of a stream cannot, as against appropriator or riparian proprietor entitled to such flow, by indirection obtain the right to divert any part thereof, by a subterranean tapping and taking of it.

ID.—DUTY OF COURT TO DECIDE ISSUES—DAMAGES—FUTURE LITIGATICN. —The court in an action to enjoin the diversion of water, and to recover damages for a wrongful diversion, must pass upon all the issues involved in the action; and it has no right, on account of the difficulty of decision, to relegate any part of the issues to future litigation. It must not only decide upon the amount of water diverted, but must also determine the amount of damages thereby sustained by the plaintiff.

ID.—REMEDY BY INJUNCTION—RESTORATION OF WATER.—The extraordinary remedy of prohibitive injunction should be granted only where no other relief is adequate. Where it appears that a city has at great expense developed water, a great portion of which it had the right to take, and that the plaintiff knew of such expense, and that some

of its water might be drained, and the amount so drained is comparatively small, the judgment should in equity make that amount good by a restoration of it either by mandatory injunction or in some equitable manner, rather than prohibitively to enjoin the city from taking any water.

Id.—Prescriptive Title of Corporation—Beneficial Use—Evidence of Title.—A corporation may acquire a prescriptive title to water appropriated by it for the beneficial use of rental and sale thereof. The same evidence available to prove ownership of a natural person acquired by prescription may be used to establish the title of a corporation.

Id.—Litigated Title—Adverse User.—The commencement of a suit against the plaintiff corporation by a third person concerning its water, of which it continues to have adverse user, cannot suspend such user or affect its acquisition of a prescriptive title by the corporation plaintiff as against all the world, except only as to the undecided question *sub judice*, it appearing that none of the defendants in this action claim under such litigant.

Id.—Pleading—Finding—Ownership — Proof of Prescriptive Title. —The plaintiff, under an averment of ownership, may prove a prescriptive title, and such proof will support a finding of ownership, which includes all probative facts, and need not specify ownership by prescription.

Id.—Action to Restrain Independent Diversions — Demurrer for Misjoinder of Causes.—An action may be brought to restrain independent diverters of the waters of the stream to the injury of the plaintiff, though not acting in concert or by unity of design where there is no claim for joint damages against them as joint tort-feasors; and a demurrer to the complaint in such action for a misjoinder of causes of action was properly overruled.

Id.—Opinion of Judge—Change of Ruling in Findings and Conclusions.—An opinion of the judge is merely an informal statement of his views of the cause, which are subject to change or modification. The legal expression of his views can only properly be found in the findings of fact and conclusions of law, and a change of the ruling from the opinion in such findings and conclusions cannot be controlled by reference to the opinion.

Id.—Answer—Plea of Prescriptive Right.—A plea of a prescriptive right to water in an answer need not specifically aver that the adverse user was peaceable. An averment that the user was uninterrupted, includes of necessity an averment that it was peaceable. The words are interchangeable and synonymous in the pleading of a prescriptive right.

Id.—Notice of Adverse User—Means of Knowledge—Knowledge of Officer of Corporation.—Where the construction of a tunnel by certain defendants claiming a prescriptive right against the plaintiff antedated the diversion of the water by one year and a half,

and the diversion of the water through it was adverse, continuous, and uninterrupted for more than five years, and where an officer of the plaintiff corporation had actual knowledge of the construction of the tunnel and of the abstraction of the waters through it, plaintiff corporation having the means of· knowledge of the diversion, and having knowledge thereof through its officer's knowledge, is chargeable with notice of the adverse user from the moment when the tunnel began to take water.

ID.—INTERRUPTION OF USER—CONSTRUCTION OF CONTRACT.—A contract for the division of water flowing through another's tunnel construed, and held not to interrupt the adverse user and prescriptive title of defendants to water flowing in their own tunnel.

ID.—CONSTRUCTION OF FINDING—IMMATERIAL OMISSION.—A finding in effect and substance that such defendants are entitled to all the water flowing in their tunnel in excess of 1.43 inches, to which the plaintiff is entitled, fixes plaintiff's right as against them, and the omission of an additional finding as to how much water the tunnel was carrying cannot injure the plaintiff.

CROSS-APPEALS from a judgment of the Superior Court of Santa Barbara County. Frank F. Oster, Judge presiding.

The facts are stated in the opinion of the court.

George H. Gould, R. B. Canfield, and William G. Griffith, for Montecito Valley Water Company, Appellant and Respondent.

The defendants had no right to injure the plaintiff's right to the surface flow by subterranean tunnels. (*Gould* v. *Eaton,* 117 Cal. 542; *City of Los Angeles* v. *Pomeroy,* 124 Cal. 635; *Vineland Irr. Dist.* v. *Azusa Irr. Co.,* 126 Cal. 486; *Proprietors of Mills* v. *Braintree Water Supply Co.,* 149 Mass. 478;[1] *Hart* v. *Jamaica Pond Aqueduct Co.,* 133 Mass. 488; *Strait* v. *Brown,* 16 Nev. 317;[2] *Emporia* v. *Soden,* 25 Kan. 588.[3]) The title of plaintiff by appropriation and prescriptive right is good as against the defendants. (*Breon* v. *Robrecht,* 118 Cal. 473;[4] *Wood* v. *Etiwanda Water Co.,* 122 Cal. 157, 158; *Langford* v. *Poppe,* 56 Cal. 76; *Carpenter* v. *Natoma Water etc. Co.,* 63 Cal. 616.) A corporation may acquire a prescriptive title. (*Bear River etc. Co.* v. *New York Mining Co.,* 8 Cal. 527;[5] *Stein etc. Co.* v. *Kern Island etc. Co.,* 53 Cal. 563; *Lake-*

[1] 14 Am. St. Rep. 460.
[2] 40 Am. Rep. 501-502.
[3] 37 Am. Rep. 265.
[4] 62 Am. St. Rep. 247.
[5] 68 Am. Dec. 325.

*side Ditch Co.* v. *Crane*, 80 Cal. 181; *South Yuba Water Co.* v. *Rosa*, 80 Cal. 333; *Gallagher* v. *Montecito Valley Water Co.*, 101 Cal. 242; *San Luis Water Co.* v. *Estrada*, 117 Cal. 168.) The plaintiff is entitled to enjoin the diversion of the surface flow by defendants till plaintiff's rights are satisfied. (*Hulsman* v. *Todd*, 96 Cal. 231; *Hillman* v. *Newington*, 57 Cal. 56; *Stein etc. Co.* v. *Kern Island etc. Co.*, 53 Cal. 563; *Steinberger* v. *Meyer*, 130 Cal. 157; *Learned* v. *Castle*, 78 Cal. 454.) The statement of ultimate facts in the opinion of the judge are findings. (*Wixson* v. *Devine*, 67 Cal. 342; *Meet* v. *McClure*, 49 Cal. 626; *Hidden* v. *Jordan*, 28 Cal. 301; *Jones* v. *Block*, 30 Cal. 227; *James* v. *Williams*, 31 Cal. 211; *In re Kingsley*, 93 Cal. 576.) A finding of a diversion of six inches of the surface flow cannot be changed by a different finding. (*Wunderlin* v. *Cadogan*, 75 Cal. 618; *Smith* v. *Taylor*, 82 Cal. 542.) The answer in relation to the Eaton tunnel is insufficient to show a prescriptive right. It does not show an adverse user. (*American Co.* v. *Bradford*, 27 Cal. 360.) Notice of adverse user is essential.

Henley C. Booth, and Thomas McNulta, for City of Santa Barbara, Respondent and Appellant.

The corporation plaintiff could not acquire a prescriptive right. The charter is the source of its power in respect to property rights. (Civ. Code, sec. 355; Dillon on Municipal Corporations, 3d ed., p. 562; 4 Am. & Eng. Ency. of Law, 1st ed., p. 230, notes 1, 2; *San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493; *Smith* v. *Morse*, 2 Cal. 524; *Weston* v. *Hunt*, 2 Mass. 502; *Vernon Irr. Dist.* v. *Los Angeles*, 106 Cal. 238, 252.) It can obtain title only by actual purchase (Civ. Code, sec. 354), or by condemnation. (Civ. Code, sec. 361.) A prescriptive right cannot be acquired in percolating water. (2 Washburn on Real Property, 70.) Plaintiff's user was interrupted. (*Alta Land etc. Co.* v. *Hancock*, 85 Cal. 227.[1]) There was no finding of plaintiff's prescriptive right. (*Ball* v. *Kehl*, 95 Cal. 606.) There was a misjoinder of causes of action, and the complaint is multifarious and demurrable. (15 Ency. of Plead. and Prac., p. 180; *Boyd* v. *Hoyt*, 5 Paige, 65; *Swift* v. *Eckford*, 6 Paige, 22 · *Emans* v. *Emans*, 13 N. J. Eq. 205.) The evidence shows

---

[1] 20 Am. St. Rep. 217.

no certain injury to the plaintiff from the acts of the city. The court did not find upon every issue upon which evidence was introduced, and the judgment must be reversed. (*Malone* v. *Bosch,* 104 Cal. 680; *Roeding* v. *Perasso,* 62 Cal. 515.) The court could not refer the issues to another action. (*Leviston* v. *Ryan,* 75 Cal. 293.)

Richards & Carrier, for Charles F. Eaton and others, Respondents.

The prescriptive right in the Eaton tunnel was properly pleaded. The averment that the adverse user was uninterrupted was a sufficient averment that it was peaceable. (Code Civ. Proc., sec. 322, 324; *American Co.* v. *Bradford,* 27 Cal. 360; *Chauvet* v. *Hill,* 93 Cal. 407; *Smith* v. *Hawkins,* 110 Cal. 122.) The plaintiff corporation had means of knowledge of the adverse user, and the means of knowledge are equal to notice. (*Montgomery* v. *Keppel,* 75 Cal. 131;[1] *Unger* v. *Mooney,* 63 Cal. 586.[2]) The knowledge of Gould as an officer of the corporation plaintiff imported notice to the corporation. (*Phelps* v. *Maxwell etc. Co.,* 49 Cal. 337; *Jefferson* v. *Hewitt,* 103 Cal. 624; *Balfour* v. *Fresno Canal etc. Co.,* 123 Cal. 395.) The finding that defendants are entitled to all the water save 1.43 inches is sufficiently definite. (*James* v. *Williams,* 31 Cal. 214; *Fogarty* v. *Fogarty,* 129 Cal. 46.)

Richards & Carrier, for George E. Coleman and others, Respondents and Appellants.

The complaint states no cause of action against these defendants. It does not show that they have any hostile or adverse claim. (Code Civ. Proc., sec. 738; *Pfister* v. *Dascey,* 65 Cal. 403.) The plaintiff had the burden of proof to show injury, and the finding and judgment should have been against him. (*Speegle* v. *Leese,* 51 Cal. 415; *Golson* v. *Dunlap,* 73 Cal. 157; *Leviston* v. *Ryan,* 75 Cal. 293; *Monterey County* v. *Cushing,* 83 Cal. 507.) The court had no right to refer the issues to another suit.

James L. Barker, Appellant, *in pro. per.*

Henry Strong, Appellant, *in pro. per.*

[1] 7 Am. St. Rep. 125.　　　　　[2] 49 Am. Rep. 100.

J. W. Taggart, for William Gillette, Respondent.

HENSHAW, J.—Plaintiff claims, and the court found it to be the owner of fifteen miner's inches of the natural flow of the Cold Springs Branch of Montecito Creek, which waters it carried away to non-riparian lands and sold for beneficial purposes to the inhabitants of Montecito. At different times three separate and independent tunnels were driven by the defendants upon lands owned by them and contiguous to the creek. The portals of these tunnels were above the bed of the creek. They were driven through the native rock, in a northerly direction, following generally the line of the creek and the main branch thereof. While starting above the level of the creek, as the tunnels were driven with slighter incline than that of the natural flow of the creek, they soon were developed, and continued to be developed below the line of the creek-bed. The distances of the tunnels from the creek-bed varied with the sinuosities of the stream from a few hundred to a thousand or more feet. In brief, therefore, and with substantial accuracy, it may be said that the tunnels were driven to one side of the creek, parallel with it, and below its level.

The country through which the creek flows is rocky and mountainous. The mountains are composed chiefly of parallel strata of porous sandstone, some of which strata are fractured and fissured, permitting the ready seepage or percolation of water. These strata extend across the cañon and across the line of the creek, which cuts them at a right angle. They are separated from each other by parallel seams of clay practically impervious to water, which serve to retain the waters which each stratum of sandstone has gathered. The stream is formed by meteoric waters falling upon its watershed of some three and a half square miles. Some of these waters flow from the surface into the stream; others reach it by percolation through the sandstone stratifications.

Plaintiff, contending that the direct effect of these tunnels was to lower the plane of saturation, and to withdraw into the tunnels water theretofore naturally flowing in the creek, thus permanently impairing and reducing the supply to which it was of right entitled, brought this action against the owners of these tunnels for injunction and for monetary compensa-

tion for the value of the water of which it had already been deprived. The court made its findings and gave its judgment, from which cross-appeals are taken by all of the parties. We will first consider the cross-appeals of the plaintiff and of the defendant the city of Santa Barbara, since the determination of the principal questions presented upon these appeals will dispose generally of the main contentions of all the parties, and leave for further consideration only those peculiar to the case of each separate litigant.

First, it should be noted as applicable to all of these appeals that this case is radically different from that of *Katz* v. *Walkinshaw,* 141 Cal. 116.[1] Here no question arises as to the use or the right to use, or the apportionment of seepage or percolating waters by and between the owners of the overlying lands. Here the waters flow or are developed in a barren and mountainous country, are of no use upon the lands within the watershed where they are found, but are of great value to the neighboring towns, cities, and fertile valleys. Each one of the parties to this action is carrying the water to alien soil, and no claimants—not even those who are riparian proprietors—pretend to use the water upon the lands from which it is obtained. In *Katz* v. *Walkinshaw* the condition presented was that of a well-defined underground catchment basin, a subterranean lake, so to speak, loosely filled with gravels. The lands above this subterranean basin were valuable because of the waters beneath, and such of the water as was taken from this basin and used upon its superior lands found its way back to the source of supply as surely as does such water when used by a riparian proprietor of a flowing stream within its watershed. In *Katz* v. *Walkinshaw* the controversy arose between the owners of such superior lands upon the one hand and a defendant water company upon the other, which, tapping the subterranean basin, was draining its waters for use upon lands without the limits of the basin, which use, if continued, threatened the impairment and destruction of all the overlying lands. The main question which this court was called upon to consider, and did consider and decide, was whether the common-law doctrine of absolute ownership in percolating water, the *cujus solum* doctrine, was or was not, under the peculiar conditions exist-

[1] 99 Am. St. Rep. 35, and note.

ing in this state, subject to just limitation under the doctrine of *sic utere tuo,* and this court, recognizing the inevitable injury that must be worked to private interests whichever rule should be held to apply, after much deliberation decided that however differently the rule might be declared in states and countries well and regularly supplied by rainfalls, in this state, with its great arid stretches, its seasons of drought, and its irregular meteoric water supply, percolating waters, when circumstances of hardship or injury should be presented in some particular case, must be held under the rule and doctrine of *sic utere.*

One more general observation pertinent to the whole case should be made. The right is unquestioned, and plaintiff itself nowhere disputes the right, of these defendants to drive their tunnels, to develop, take, and use any and all new waters which they may thus find. Plaintiff's contention, however, is, that the effect of these tunnels below the line of the surface of the flowing stream is first to draw into the tunnels the waters of the saturated sandstone strata above (which saturated strata under normal conditions form a support to the flowing waters of the stream), and thus create a direct draft upon the flow of the stream itself, so that it no longer follows its natural course and bed, but sinks into the lower tunnels, which themselves practically, efficiently, and absolutely form new channels in place of the original surface stream. This effect of the tunnels is denied by the defendants, and this issue and the court's finding upon it present the principal question in the case.

CROSS-APPEALS OF PLAINTIFF AND CITY OF SANTA BARBARA.

The court, after finding that the plaintiff was entitled of first right to the natural flow of the creek to the extent of fifteen miner's inches, and that it was devoting this water to a public use, declared (finding No. 9): "That the said tunnels have pierced the strata hereinbefore mentioned and have drawn off the water stored in said strata, and lowered the planes of saturation in said strata (which said planes of saturation had previously thereto supported the flow of water in said creek), and caused the voids and crevices in said strata to be in part emptied of the water contained therein, and caused the waters of said creek and said tribu-

tary springs and *cienegas* to be in part drawn into said voids and crevices and to enter said strata and to pass along said strata and into said tunnels and through the same, and that the said tunnels have caused the partial absorption as aforesaid of the flow of said creek so that no water at all flows down the main branch thereof below the junction of the west fork with said main branch nor over the falls on said main branch, which are about 4,500 feet above plaintiff's aforesaid dam, nor for a long distance above said falls, and so that only for a short time during heavy rains does any water flow down the east branch thereof into said main branch, but the flow of said creek is partially absorbed as aforesaid into said strata and passes in part into and through said tunnels and is in part given out gradually by the flow of said tunnels from the mouths thereof and that partially by the influence of said tunnels said creek has been destroyed as aforesaid." It declared as to the city of Santa Barbara (finding No. 8): "That by means of said tunnel said defendant city has since the commencement of this action and prior thereto abstracted and diverted, and still abstracts and diverts, four and sixteen one hundredths (4.16) miner's inches of water, measured under a four-inch pressure, from the main fork (sometime called the west fork) of said Cold Springs Branch, and said quantity of water now passes into and through said tunnel and not in its natural and accustomed channel; . . . that the said city intends to continue to divert and use said waters as aforesaid and to sell the same, unless restrained by the order of this court." Further (finding No. 11): "That since the commencement of this action and prior thereto, the defendant city of Santa Barbara has, by means of its tunnel aforesaid, abstracted from said Cold Springs Branch a portion of the flow thereof amounting to four and sixteen one hundredths (4.16) miner's inches of water, measured under a four-inch pressure, which amount of water said city of Santa Barbara has not returned into said stream, but has diverted and applied to its own use and has sold for large sums of money, which said city has received therefor and retained." And still further (finding No. 13): "That none of the water developed or obtained by or through the city tunnel, other than said amount of four and sixteen one hundredths (4.16) inches, measured under a four-inch

pressure, is or has at any time been a part of said stream or abstracted therefrom; on the contrary, all of said water developed and obtained by and through said city tunnel, other than said four and sixteen one hundredths (4.16) inches, measured under a four-inch pressure, are percolating waters, no part of which were ever a part of said stream or necessary to the protection or support thereof.'' And lastly (finding No. 17): ''That the court is unable to find or determine from the evidence in this case whether or not all or any part, and, if a part, what part, of said four and sixteen one hundredths (4.16) inches of water abstracted from said stream by said city tunnel would, if permitted to flow by said city tunnel in its natural and accustomed way, or if returned from said city tunnel to said stream, reach plaintiff's dam and point of diversion.'' Following these findings, the court announced the following conclusion of law (No. 4), upon which judgment was accordingly entered: ''That in order that equity may be done to all parties herein, leave ought to be and is granted to plaintiff and defendant city of Santa Barbara, and to each of them, and to all and any other persons claiming any interest with, through, or under them, or either of them, in or to said four and sixteen one hundredths (4.16) inches of water hereinafter in this paragraph mentioned, to bring another action to determine whether or not all or any part, and, if a part, what part, of said four and sixteen one hundredths (4.16) inches of water abstracted from said city tunnel would, if permitted to flow by said city tunnel in its natural and accustomed way, or if returned from said city tunnel to said stream, reach plaintiff's said dam and point of diversion; and for like reason leave ought to be, and is, granted to plaintiff to bring another action to determine the amount of money received by said city of Santa Barbara from the sale of all or such part, if any, of said four and sixteen one hundredths (4.16) inches of water as would reach plaintiff's said dam and point of diversion if permitted to flow by said city tunnel in its natural and accustomed way, or if returned from said city tunnel to said stream, and to compel said city of Santa Barbara to account to plaintiff therefor.''

It would unnecessarily and uselessly prolong this consideration to enter into a discussion of the evidence bearing

upon finding 9 of the court. It must suffice to say that the evidence justified the court's conclusion that the tunnels did draw into themselves a part of the natural flow of the creek. But it is contended that, even so, these waters were percolating waters which had so far left the stream as to have lost their distinctive character as part of its flow, within the meaning of *Vineland Irrigation Dist.* v. *Azusa Irrigation Co.*, 126 Cal. 486, where it is said that percolating waters "may either be rain waters which are slowly infiltering through the soil, or they may be waters seeping through the banks or bed of a stream which have so far left the bed and other waters as to have lost their character as part of the flow." But in that case it is further said: "If, upon the other hand, the taking of this water by plaintiff, as the court finds, creates an artificial draft upon the surface flow of the stream, draws down a part of it, and weakens and injures the natural bed of the stream, and tends to interrupt and carry away from the defendants the surface flow, and to deprive them of it, . . . defendants are entitled to an injunction to restrain this illegal interference." This last quotation presents the case declared by the finding, so that it is not a new proposition in this state, nor is it a new decision to declare that one who has no legal right to the surface flow of the stream may not, by indirection, acquire that right by a subterranean tapping and taking of it. Riparian proprietors and appropriators of the surface water still have the right to invoke the maxim, *Aqua currit et debet currere ut currere solebat.* For the extent to which this principle has been recognized reference may be made to the later cases of *McClintock* v. *Hudson*, 141 Cal. 275, and *Cohen* v. *La Cañada Land and Water Co.*, 142 Cal. 437.

It is, however, contended by the city of Santa Barbara that, giving all due force and effect to finding 9, the following finding 17, in which the court announces its inability to determine from the evidence whether all or any part of the 4.16 inches of water abstracted from the stream by the city tunnel would, "if permitted to flow by said tunnel in its natural and accustomed way, or if returned from said city tunnel to said stream, reach plaintiff's dam and point of diversion," is absolutely destructive of plaintiff's case, and necessitates either a judgment for the defendant, or, at

the least, a reversal of the cause, and, in this immediate connection, that the conclusion of law above quoted and embodied in the judgment, relegating the parties to future litigation for the determination of this question, is improper and illegal. Upon the other hand, the plaintiff contends, upon its appeal, that the ninth and eleventh findings above quoted are findings of ultimate facts, are absolutely conclusive upon the merits of the case, and themselves entitle plaintiff to its judgment, and that finding 17 may and should be disregarded.

Upon behalf of the defendant it is argued that it was incumbent upon the plaintiff to show not only an abstraction of water, but to show detriment and damage caused by the abstraction. That since the court, as it declared in finding 17, was not able, under the evidence offered, to determine whether the 4.16 inches of water abstracted from the stream would reach plaintiff's point of diversion, the plaintiff had failed to show any loss in the taking by defendant of this water, and that it must be concluded that the water which the defendant took was such waters as are mentioned in *Vineland Irrigation Dist.* v. *Azusa Irrigation Co.,* 126 Cal. 486,— that is to say, waters which had so far left the bed of the stream and its other waters as to have lost their character as part of the flow. By finding 9 the court declares that the effect of these tunnels is to create an artificial draft, first, upon the saturated strata which support the flow of the stream, and, exhausting them, or in the process of exhausting them, to suck down and drain directly the waters flowing in the channel of the stream. By finding 11 it is declared that the amount so abstracted is 4.16 miner's inches, but by finding 17 it is said that it cannot be determined how much of this water, if permitted to flow past the city tunnel "in its natural and accustomed way, or if returned from the city tunnel to the stream, would reach plaintiff's point of diversion." The construction of this finding is somewhat difficult. Did the court mean that it could not determine whether the water would reach plaintiff's point of diversion because of the changed conditions created by these tunnels, or did it mean that it could not determine whether this water would reach plaintiff's point of diversion if the natural conditions had never been disturbed? The answer is somewhat in doubt. But nevertheless the other findings plainly declare that the

defendant has created an unnatural and artificial draft upon the waters of the stream by which it has abstracted a portion of the flow thereof amounting to 4.16 'inches. Under these findings it would seem to be indisputable that defendant has been taking, and is taking, that amount of water rightfully belonging to plaintiff. But if that amount of water rightfully belongs to plaintiff, since plaintiff only claims the surface flow, it could only be plaintiff's water because it was a part of that surface flow or the support of it. In either case plaintiff would be entitled to its remedy. What, therefore, is meant by the declaration of finding 17 we confess ourselves under difficulty in determining. But construing it most favorably for defendant's contention, it amounts to no more than a declaration that the court cannot determine that this particular water would, under natural circumstances, have reached the point of diversion. But this is not all of the question. If the particular 4.16 inches would not so have reached the point of diversion, it must follow from the other findings that this particular 4.16 inches would have maintained the plane of saturation, and furnished a support whereby some other 4.16 inches would have flowed on to the point of diversion. In other words, the court has said that it could not determine whether the tunnel took the direct flow of 4.16 inches, but it has unequivocally said that it has taken the indirect flow of that amount of water, and what the defendant could not do directly it could not legally do by indirection.

The trial court in relegating these parties to a future action for the determination of this question, and of the amount in money to which the plaintiff may be entitled for the unlawful taking and disposition of its waters, seemingly relied upon the case of *Bathgate* v. *Irvine*, 126 Cal. 135.[1] *Bathgate* v. *Irvine* was not at all similar in principle to the case at bar. That action was brought by nearly three hundred plaintiffs to quiet their title to the waters of Santiago Creek, seeking an injunction against the defendant, James Irvine, an upper riparian owner. The essential matter in controversy, therefore, was the right of Irvine against the collective plaintiffs, and the court determined those rights, decreeing that he was not entitled to divert or use the whole of the

[1] 77 Am. St. Rep. 158.

waters of the creek, except for domestic and stock uses, or
to divert or conduct any portion of the waters of the creek
outside the watershed thereof, or to use any portion of the
waters upon any lands except for domestic and stock uses
and purposes.  As to the plaintiffs, under their claim of
injunction, the court found that they were riparian owners
of land through which the creek flowed, and that each was
entitled to divert, take, and use a portion of the water for
the purpose of irrigating his lands and for domestic use and
watering stock.  It is plain that so far as Irvine was con-
cerned, his rights to the water having been determined as
against all the plaintiffs collectively, it could be no injury
to him that the court failed to find the separate and individual
rights of the two hundred and seventy-five plaintiffs, and it
was as to that proposition that this court said, upon the
assigned error for failure to find the extent of the plaintiffs'
rights, that, having quieted the title of the plaintiffs against
the defendant, and having determined his rights, while the
court could, if the evidence had justified it, have determined
the separate rights of the plaintiffs, it was warranted in
doing as it did, rendering a judgment leaving it open to any
of the party plaintiffs to bring appropriate action to deter-
mine the proportion of the waters to which he was entitled.
That case, however, as the statement shows, is radically dif-
ferent from the case at bar, where the vital questions to be
determined between the plaintiff and the defendants is
whether they are unlawfully injuring plaintiff's water-rights,
and unlawfully taking plaintiff's water.  If so, to what ex-
tent?  How long has the unlawful taking and injury con-
tinued?  What is the damage to plaintiff for such injury,
and what by way of injunction or otherwise should be the
relief accorded in contemplation of a continuance of the
wrong?  By the judgment actually rendered in this case
the only matters determined are the unlawful taking and
injury, and the extent thereof.  All other matters by the
judgment are relegated to future litigation.  In this the judg-
ment of the court is clearly erroneous, and must be reversed
upon the findings actually made.  At the same time it was
the duty of the court to have found upon the matter of the
damage sustained by plaintiff because of the unlawful ab-
straction of the water by defendants.  And upon this point

the case must be reopened for the taking of testimony and the making of appropriate findings, and finally it will be for the court to determine whether an injunction is a necessary, or even appropriate, remedy in this case.   By this we mean that in such a case as this the extraordinary remedy of a prohibitive injunction should be granted only if it shall appear that no other relief is adequate.   It is disclosed by the facts in this case that the city of Santa Barbara has driven its tunnel at great expense.   The plaintiff was aware of this, and had reason to believe that the effect of the tunnel would be to drain its waters.   (*Gould* v. *Eaton,* 111 Cal. 639.[1])   It is disclosed that of all the waters which the tunnel takes but 4.16 inches are from the flow of the stream.   If that amount of water could be made good to the plaintiff, the judgment, in common equity, should provide accordingly. It would be a manifest hardship and injustice to deprive the defendant by injunction of the right to take any of the water when only a small part of that which it does take is subject to the claim of plaintiff, and plaintiff could be fully compensated by a restoration of it.

The court found that since the year 1888 the plaintiff had been the owner of fifteen miner's inches, which it was actually diverting and distributing among the inhabitants of the town of Montecito, and that the use so made by the plaintiff was a beneficial use for domestic purposes, the watering of stock and the irrigating of otherwise arid lands.   Plaintiff's title was based, first, upon a judgment in its favor in condemnation proceedings instituted by it against John Coe and John W. Coe, and, second, a prescriptive title growing out of its continued, uninterrupted, adverse taking, and use of the waters since the date of the decree in the condemnation suit. Defendant alleges many imperfections and defects in the condemnation proceedings, which it will not be necessary here to consider, the more particularly because it appears that these questions are themselves in litigation in an action brought by the executrix of John W. Coe's estate against this plaintiff.   We think plaintiff sufficiently establishes its prescriptive right to the waters in controversy.   First, the use under claim of right is well established.   Second, although the use made was for the purposes of rental and sale of the

---

[1] 52 Am. St. Rep. 201.

water, that use is beneficial under the very terms of the constitution itself (art. XIV, sec. 1). Third, the only asserted interruption to the use was by proof of an action brought by Elizabeth A. Coe, as executrix of John W. Coe, one of the defendants in the condemnation suit, against the plaintiff in this case (plaintiff likewise in the condemnation suit), on account of its claim to the water here in question, and it is argued upon the authority of *Alta Land Co.* v. *Hancock* 85 Cal. 227,[1] that the effect of this action was to stop the running of the statute of limitations and prevent the perfecting of a prescriptive right. But defendant's position cannot be supported. In *Alta Land Co.* v. *Hancock* the defendant, Hancock, had sued the grantors of the plaintiff in ejectment before the expiration of the period limited by law and recovered. As to him, therefore, plaintiff had acquired no prescriptive right. At the same time, its prescriptive right against all the world but the true owner, who had brought his action within the statutory period, was complete. This is explained in *Breon* v. *Robrecht,* 118 Cal. 469,[2] where it is said: "The owner is simply required to sue within a limited period. If he does not, he cannot maintain an action to recover the property. In such event the disseizor, being in possession, can maintain his right against the whole world. *He could always prevail over all save the true owner,* and when the owner cannot sue his title has become unassailable. . . . Title by possession, good against all the world save the true owner, defendant already had. He has only the same title after the statute has run, but the true owner has then lost his right of action." In this case it is to be observed that the defendant does not pretend to connect itself with the title of the Coe estate, and indeed its claim to these waters is in as strict hostility to the title of that estate as it is to the title of plaintiff. The plaintiff's title is still good against all the world saving that, as to the undecided question upon the part of the Coe estate, it is *sub judice.* The evidence in this case demonstrates that this plaintiff refused to recognize the validity of the Coe claim, which only tends to prove that plaintiff's claim is in fact adverse to the whole world. (*Langford* v. *Poppe,* 56 Cal. 77; *Carpenter* v. *Natoma Water Co.,* 63 Cal. 616.)

---

[1] 20 Am. St. Rep. 217.                    [2] 62 Am. St. Rep. 247.

Plaintiff pleaded ownership, and the court in terms found ownership in the plaintiff. Defendant's further objection that there is no finding of ownership by prescription is untenable. The court finds ownership and continuous use and occupation for beneficial purposes for the full prescriptive period. This finding of ownership includes all the probative facts. (*Cooper* v. *Miller*, 113 Cal. 238; *Adams* v. *Crawford*, 116 Cal. 499.) Title by prescriptive right can be proved under the general allegation of ownership. (*Gillespie* v. *Jones*, 47 Cal. 259.)

But against this title it is urged that because plaintiff is a corporation it has no power under the law to acquire title by prescription, and is limited strictly in its mode of acquirement to purchase and to condemnation, which is but a form of purchase. (Civ. Code, secs. 286, 360.) It is herein contended that "purchase," as employed in the code, means the acquisition of title from a voluntary grantor by the payment of price, or other valuable consideration, and that, as the law has not conferred upon these corporations the general right belonging to the individual to "acquire" lands by any legal method, the mode of acquisition must be strictly limited to purchase. We think, however, that this presents altogether too narrow a view of the rights and powers of corporations in this regard. The right of a corporation such as this to "hold" land is of course unquestioned. It is expressly conferred by subdivision 4 of section 354 of the Civil Code. Section 1007 of the same code declares that occupancy for the period prescribed by the Code of Civil Procedure is sufficient to bar an action for the recovery of the property, and confers a title thereto denominated a "title by prescription," which is sufficient against all. "The same evidence available to prove ownership of a natural person in property may be used to establish the title of a corporation." (4 Am. & Eng. Ency. of Law, p. 231.) In this state a corporation's title to water either by appropriation or prescription has been recognized and upheld from the very earliest day. (*Bear River etc. Co.* v. *New York Mining Co.*, 8 Cal. 327;[1] *Stein Canal Co.* v. *Kern Island Irr. Co.*, 53 Cal. 563; *Anaheim Water Co.* v. *Semi-Tropic Water Co.*, 64 Cal. 185; *Lakeside Ditch Co.* v. *Crane*, 80 Cal. 181; *South Yuba Water Co.* v.

---

[1] 68 Am. Dec. 325.

*Rosa,* 80 Cal. 333; *San Luis Water Co.* v. *Estrada,* 117 Cal. 168.)   Indeed, the very prescriptive title here asserted by plaintiff was passed upon and upheld by this court in *Gallagher* v. *Montecito Co.,* 101 Cal. 242.

The demurrer of the defendant city to the complaint upon the ground of misjoinder of causes of action was properly overruled.   Indeed, the appellant city concedes in this case that in an action which is brought by a plaintiff who claims an appropriative right to take water from a stream against several defendants who are alleged to be diverting water from the stream to the injury of plaintiff, it is not necessary that the defendants be acting in concert or by unity of design. Such was the action here brought against independent diverters, with no claim for joint damages against them as joint tort-feasors.   The pleading of the plaintiff was proper, under *Hillman* v. *Newington,* 57 Cal. 56, and *People* v. *Gold Run Co.,* 66 Cal. 138.[1]   In *Miller* v. *Highland Ditch Co.,* 87 Cal. 430, a joint judgment for damages against several independent tort-feasors not acting in concert or by unity of design was, for very obvious reasons, held to be erroneous.   But no such joint judgment was here sought.

The trial court filed a paper which it entitled its ''Opinion,'' the views expressed in which were somewhat modified when the formal findings of the court were subsequently prepared, signed, and filed.   At the time that the opinion was presented, the court entertained the view that an amount of water in excess of 4.16 inches—namely, six inches of water—was abstracted by the city tunnel, and plaintiff insists that the amount so declared should control, and that this opinion should be treated as the findings of the court. The position, however, is untenable.   The opinion was no more than its name imports,—the informal views of the court, subject to future modification after argument, which was actually had, the legal expression of those views being found, as only properly they could be found, in the formal findings of fact and conclusions of law.   (*Byrne* v. *Hoag,* 116 Cal. 1; *O'Brien* v. *O'Brien,* 124 Cal. 422.)

We have examined the alleged errors in the rulings of the trial court in admitting evidence and find nothing therein of which the defendant city has just cause for complaint.

---

[1] 56 Am. Rep. 80, and note.

APPEAL OF PLAINTIFF AGAINST DEFENDANTS OWNERS OF THE
EATON TUNNEL AND OF THE WATERS DERIVED THEREFROM.

The defendants owners of the Eaton Tunnel and of the waters gathered therein do not appeal from the judgment of the court, and appear herein in the rôle of respondents. Their tunnel was first constructed, and has heretofore been the subject of litigation as to the effect of it upon the flowing water of the stream. (*Gould* v. *Eaton,* 111 Cal. 639;[1] *Gould* v. *Eaton,* 117 Cal. 539.) The trial court found that the defendants owners of the Eaton Tunnel had acquired a prescriptive right to all the water flowing in their tunnel in excess of the quantity of 1.43 miner's inches which under the judgments in the cases above cited they were found to be abstracting from the waters of the creek, and which they were ordered to return thereto, an order with which, admittedly, they have complied. The language of the answers upon the plea of prescriptive title is as follows: "They and their predecessors in title have been in the actual occupation, possession, use, and enjoyment, open and notorious and not clandestine, and in hostility to plaintiff's title and claim of title, under a claim of title exclusive of any other title, and as their own, continuously and uninterruptedly for a period of more than five years." It is first urged that the pleading is defective in failing to allege that the possession was peaceable, but nowhere in the code is such an averment required. Sections 322 and 324 of the Code of Civil Procedure require an actual occupation, that this occupation be open and notorious, and that it be in hostility to plaintiff's title, and under a claim of title exclusive of any other right, and that the occupation shall have been continuous and uninterrupted for five years. Section 325 of the same code makes the additional requirement of the payment of all levied and assessed taxes. In *Unger* v. *Mooney,* 63 Cal. 595,[2] these essential elements for the acquisition of a title by prescription are specifically set forth. It is true that in *Cave* v. *Crafts,* 53 Cal. 135, it is said that the adverse use must be peaceable. But that means no more, as the opinion itself explains, quoting Wood on Nuisances, than that it must be uninterrupted. Says Wood: "The use must also be open and as of right, and also peaceable, for if there is any act done by other owners

---

[1] 52 Am. St. Rep. 201.　　　　[2] 49 Am. Rep. 100.

that operates as an interruption, however slight, it prevents the acquisition of the right by such use.'' If the possession has been uninterrupted, of necessity it has been peaceable. If it had been interrupted, of necessity it has not been peaceable. The words are therefore interchangeable and synonymous in the pleading of prescriptive title. (*American Co.* v. *Bradford,* 27 Cal. 360; *Chauvet* v. *Hill,* 93 Cal. 407; *Smith* v. *Hawkins,* 110 Cal. 122.)

It is next urged by appellant that the possession of defendants was clandestine, and not brought to its knowledge until less than five years before the commencement of this action. The water was actually diverted for a little more than five years before the commencement of the action, but the construction of the tunnel antedated the diversion by a year and a half. The work was openly carried on during this time, and it could not be reasonably urged that such work—running a tunnel for six hundred feet in the side of a cañon, at a point only five hundred feet distant from plaintiff's place of diversion—could be carried on clandestinely. From the moment when the tunnel began to take water it would seem that plaintiff was charged with notice. The means of knowledge were certainly open to it. (*Montgomery* v. *Keppel,* 75 Cal. 131;[1] *Unger* v. *Mooney,* 63 Cal. 586.[2]) But in addition to that, Mr. Gould, plaintiff in the litigation of *Gould* v. *Eaton,* during all this time was himself an officer of plaintiff corporation, and had actual knowledge of the construction of the tunnel and its abstraction of the waters and the intention of the owners to divert the water. This knowledge was his as early as February 24, 1894, when the complaint in *Gould* v. *Eaton* was verified. As a corporation can have knowledge only through the information of its officers and agents, the knowledge of such officers within the scope of their duties and employment becomes the knowledge of the corporation. (*Phelps* v. *Maxwell's C. G. M. Co.,* 49 Cal. 337; *Jefferson* v. *Hewitt,* 103 Cal. 624; *Balfour* v. *Fresno Canal etc. Co.,* 123 Cal. 395.)

It is next urged that defendants' user did not ripen into a prescriptive title by reason of a composition entered into between the parties for a temporary division of the water flowing in the creek. It is insisted that this agreement em-

[1] 7 Am. St. Rep. 125.          [2] 49 Am. Rep. 100.

braced the Eaton Tunnel flow, which was dependent upon the flow of the creek and its tributaries, and that no contest could have been begun against the tunnel diversion while the flow of the creek which fed the tunnel was being divided under this settlement. The agreement was entered into between the plaintiff, the defendant Charles F. Eaton, and G. H. Gould. It may be said in passing that the defendant Richardson is not affected by this agreement, as his predecessors in title, Sheffield, Vail, and Gillette, were none of them parties to it. But, as to the agreement, it does not appear to have embraced within its contemplation (excepting in one minor clause) the waters drained by the Eaton Tunnel. The recital declares that whereas Eaton has been diverting a quantity of water from the Cold Springs Branch at a point on the west fork above plaintiff's point of diversion, "under claim of ownership of water flowing into said branch from the tunnel of the city of Santa Barbara in said county, and under further claim that said tunnel is a non-riparian source of said water, and whereas said party of the first part, Montecito Valley Water Company, denies the right of said party of the second part so to divert said water." It thus appears that the water which was the subject of their composition was not water gathered by the Eaton Tunnel, but water claimed by Eaton and flowing from the tunnel of the city of Santa Barbara under his, Eaton's, contract with that city. The agreement then provides that Eaton will supply a flume by which the Montecito Valley Water Company shall, until the fall rains, divert from the creek all of its waters, but delivering to Eaton, at his box, six inches of it. Gould during this time was to waive his right to have 1.46 inches of water turned into the creek, and the water company and Gould released Eaton, not from any claim as to the damages occasioned by the Eaton Tunnel, but solely "for damages on the ground of the abstraction from said west fork of any water heretofore diverted therefrom by Eaton by means of said line of flumes so belonging to him as aforesaid." And, finally, the parties seem to have been particular to preserve the *status* of their respective claims touching the Eaton Tunnel, for it is further provided: "That nothing in this agreement shall be understood as a waiver on the part of any party hereto of any right to any water running in any part of said

Montecito Creek or the branches or forks thereof, except subject to the foregoing terms and agreements and during the continuance thereof and as provided therein.'' The trial court construed this contract as not interrupting the continuance of defendant's asserted prescriptive right, and in this we think its finding is supported.

It is further contended by appellant that its rights were not invaded until the tunnel actually operated to decrease the supply to which it was entitled, and that this result was reached within five years. A discussion of this would involve some mathematical calculations and an analysis of conflicting evidence. It must be sufficient to say that the conclusion of the court, that the invasion of plaintiff's right had existed for five years, is supported.

It is last complained that the court did not find the amount of water to which the Eaton Tunnel defendants were entitled under their claim of prescriptive right. The finding of the court is, that the defendants have diverted and applied to useful purpose all the water flowing from said tunnel in excess of the quantity of 1.43 miner's inches. Plaintiff's right, so far as this tunnel is concerned, is fixed by this finding, which, in effect and substance, declares that defendants are entitled to all the water which their tunnel carries in excess of the 1.43 inches. An omission of an additional finding as to how much water in fact the tunnel was carrying cannot injure plaintiff, since it is found that defendants were entitled to it all, as in *Fogarty* v. *Fogarty*, 129 Cal. 46, where it is said: ''While the finding that the plaintiffs are entitled to all the water at the place in dispute remains, the capacity of the ditch or its enlargement is of no moment.''

CROSS-APPEALS OF PLAINTIFF AND DEFENDANTS OWNERS OF THE
BARKER TUNNEL AND OF THE WATERS DERIVED THEREFROM.

The Barker Tunnel is in location intermediate between the Eaton Tunnel and city tunnel, and was the second upon which work of construction was begun. Plaintiff impleaded the defendant Barker as claiming ownership in the tunnel and the waters collected by it, and certain other defendants, who for convenience may be designated the Coleman group, as claiming interests in the tunnel and its waters. The court's findings in regard to this tunnel were, that Barker had exca-

vated it for a distance of more than twelve hundred feet; that by a judgment between the parties the plaintiff was estopped from claiming that the first nine hundred and twenty-five feet of the Barker Tunnel abstracts any of the water from the Cold Springs Branch or its tributaries, but that it is not estopped from asserting such abstraction as to the remaining portion of the tunnel; that the remaining portion of the tunnel had abstracted and diverted, and still abstracts and diverts, two and one-half miner's inches of water; that Barker has conducted this water away from the creek, sold it to divers persons, who have beneficially used it, for large sums of money, has not accounted to plaintiff for any of this money, nor has he returned the waters or any of them to the channel of the creek; that Barker threatens and intends to continue to divert and use the water in this manner; that the Coleman group of defendants claim, under purchase from Barker, rights to certain portions and amounts of the water flowing from the mouth of the tunnel of Barker, as aforesaid; that no part of the water developed and obtained through the Barker Tunnel, saving this two and one-half inches, is, or at any time has been, a part of the stream, or abstracted therefrom, or necessary to the protection or support thereof. The court then makes its finding, identical with finding 17, above quoted, to the effect that it cannot determine how much of this two and one-half inches, if permitted to flow by the Barker Tunnel in its natural and accustomed way, would reach plaintiff's dam and point of diversion. Its conclusion of law and judgment upon these matters is identical with that which it rendered in the matter of the city,—that is to say, it relegated the litigants to another action, both to determine this question and to determine what relief by way of mandatory injunction, compensation, or otherwise should be accorded.

Upon the grounds previously discussed, and for the reasons previously given in the consideration of the cross-appeals of the plaintiff and the city of Santa Barbara, the judgment relegating the parties to further and future litigation must be reversed, since, as said in *Steinberger* v. *Meyer,* 130 Cal. 158, it serves only "the single purpose of furnishing the groundwork for future litigation, and plaintiff is certainly entitled to something more." So also must the case be opened

for the taking of further testimony, and the determination of the financial loss which plaintiff has undergone by reason of the unlawful taking of its waters.  All that has heretofore been said upon the cross-appeals of the plaintiff and the city of Santa Barbara touching the support which the findings draw from the evidence, and touching the weight to be given to finding 17 (which is identical with finding 16 so far as the Barker Tunnel is concerned), is applicable to the consideration of the questions presented upon these appeals.  As to plaintiff's claim that it is entitled to an injunction to prevent the further extension of the Barker Tunnel, it is sufficient to say that the complaint does not charge a threatened extension, but merely a continuance of the present diversion.  As to plaintiff's second contention, that these defendants should not be allowed to withdraw any water until the full fifteen inches found to belong to plaintiff have been supplied, it is a complete answer to say that the court finds that, of that fifteen inches, these defendants are responsible for the abstraction of but two and a half inches.  Over this amount there is no controversy by any of the parties, and as to this amount plaintiff's remedy would be complete under a mandatory injunction compelling its restoration to the supply of plaintiff.

The Coleman group of defendants contend that their demurrer should have been sustained, and that no relief should have been awarded against them for a failure of the complaint to make it appear that they are asserting any rights in hostility to plaintiff, or taking any of the water rightfully belonging to plaintiff; but it is charged in the complaint and declared in the findings that they have purchased from Barker certain of his alleged rights to portions and amounts of the water flowing from the tunnel, and it is further alleged that all of the water flowing from the tunnel was unlawfully abstracted from plaintiff's supply.  It is certainly true that these defendants are interested in the result of the litigation, and in the relief which may be accorded, and are therefore proper parties defendant to have before the court in this equitable proceeding for the complete adjustment of all claims and rights.  (*Randall* v. *Duff*, 79 Cal. 115; *Gardner* v. *Samuels*, 116 Cal. 84.[1])  The demurrer was therefore properly

[1] 58 Am. St. Rep. 135.

overruled.   The other propositions advanced by the Coleman group of defendants are the contentions urged upon the appeal of the city of Santa Barbara, and there considered and disposed of,—namely, that the findings of the abstraction of water are not supported by the evidence; that the findings fail to show injury; and that upon the findings defendants are entitled to their judgment.

We have thus considered all of the propositions advanced upon the various appeals with the result here expressed.

First, that the judgment as to the Eaton Tunnel defendants is affirmed.

Second, that the judgment as to the city of Santa Barbara is reversed, with directions to the trial court to determine what compensation by way of damage plaintiff is entitled to for the unlawful abstraction of 4.16 inches of water, and to make provision against a continuance of this injury by appropriate decree, either that of a mandatory injunction requiring the restoration of the given amount of water or in some other manner which shall be meet in equity, and the court will further make provision protecting the respective parties in their rights, in the event that a further extension of the city tunnel with a further injury to plaintiff's rights shall be threatened, in this regard having in consideration the fact that a prohibitory injunction should only be granted if any and all other forms of relief should be found inadequate.

Third, as to the owners and defendants in interest in the Barker Tunnel the judgment is also reversed, with the same directions to the trial court as those set forth in reference to the city of Santa Barbara in the second paragraph hereof.

Fourth, the defendants and respondents owners of the Eaton Tunnel and of the waters flowing therefrom to recover their costs; the Montecito Valley Water Company to recover its costs upon its appeals against the city of Santa Barbara and against the owners of the Barker Tunnel and of the waters flowing therefrom, and likewise to recover its costs as respondent upon the appeals of these last-named parties.

McFarland, J., Van Dyke, J., Shaw, J., Lorigan, J., and Angellotti, J., concurred.