[L. A. Nos. 1640, 1641. Department Two.—January 11, 1905.]

SOLEDAD GUTIERREZ et al., Appellants and Respondents, v. HENRY WEGE, Respondent and Appellant.

WATER-RIGHTS—QUIETING TITLE—USER BY RIPARIAN OWNER—FINDING AGAINST EVIDENCE.—In an action to quiet title to waters of a creek having rise in a spring on the land of the defendant and flowing into the land of plaintiff, evidence which goes no farther than to show that the defendant had been making such reasonable use of

the water for domestic purposes and for irrigation as he was entitled to as a riparian owner is inconsistent with a finding that for more than six years the defendant had adversely diverted and used all the waters of· the spring and creek.

ID.—ADVERSE USE—PRESCRIPTIVE RIGHT.—A use of the water strictly within the legal rights of a riparian owner, and with which no other person has a right to interfere, cannot be called an adverse use for the purpose of conferring a property right or ownership in the water under the statute of limitations.

ID.—RIGHTS OF RIPARIAN OWNER.—The water of a riparian stream is parcel of the land; and one riparian owner as against a lower one is entitled only to a reasonable use of the water upon his land, with no power to convey it elsewhere to the detriment of the lower riparian proprietor. If he should acquire rights by user, he does not become the absolute owner, and his rights would be limited by the extent of the user.

ID.—INCREASED FLOW FROM SPRING.—It may be that if the first riparian proprietor had increased the flow by digging out the spring on his land, he would be entitled to a greater portion of the stream on a fair division of it; but such increased flow would not entitle him to all of the waters naturally flowing from the spring into the creek.

ID.—OBSTRUCTION OF STREAM—INJUNCTION.—It is not consistent with the law of riparian rights to enjoin a riparian owner from obstructing in any wise the riparian stream. Some obstruction of it is necessary in order to make any use of the water for irrigation or for domestic or house use. There are some circumstances under which the upper proprietor may properly divert and consume the entire stream, for a time at least, without actionable wrong.

ID.—DECREE TO FIT STREAM — ALTERNATE USE.—The decree settling water-rights as between riparian proprietors should be made to fit the stream it applies to; but where the stream is small the parties, as a general rule, can best be served by giving them the alternate use of the entire stream.

ID.—COSTS—DISCRETION OF COURT.—In an action to quiet title to a riparian stream a part of the decree, that neither party recover costs, is within the equitable discretion of the trial court.

CROSS APPEALS from a judgment of the Superior Court of Ventura County. Felix W. Ewing, Judge.

The facts are stated in the opinion.

G. H. Gould, and W. R. Edwards, for Soledad Gutierrez et al., Appellants and Respondents.

H. L. Poplin, for Henry Wege, Respondent and Appellant.

GRAY, C.—This action is brought to quiet title to the waters of Casitas Creek, a small stream having its rise in a spring on the land of defendant and flowing for some distance into the adjoining land of plaintiffs. The judgment in the case is as follows:—

"1st. That the defendant owns and is entitled to the sole and exclusive use of all the waters flowing from that certain spring situate upon the N. W. ¼ of the S. W. ¼ of section 29, described in defendant's amended answer, and to all waters flowing in said Casitas Creek above the reservoir situated near the south line of said land and in the bed of said creek;

"2d. That of the waters arising and flowing in said creek below said reservoir, the plaintiffs as riparian owners are entitled to 40/41 thereof, and the defendant as riparian owner is entitled to the remainder;

"3d. That the defendant and his agents and employees are perpetually restrained and enjoined from hereafter obstructing or polluting, in any wise, the said Casitas Creek below said reservoir; and

"4th. That neither party recover his costs or disbursements. in this action."

There are two appeals before us from this judgment; the plaintiffs appeal from the first paragraph thereof, and defendant appeals from the second, third, and fourth paragraphs.

We are of opinion that the first paragraph of the judgment, wherein it is decreed that the defendant "owns and is entitled to the sole and exclusive use of all the waters," etc., is not warranted by the evidence taken at the trial.

Something upwards of five years before the commencement of the action defendant had constructed a reservoir on his land in the channel of the creek in question through which ran the waters from the spring. From this reservoir he had constructed small ditches on each side of the creek through which he conveyed water for the purpose of irrigating a few acres of his land, not more than four or five acres at the outside. Defendant had also dug out the spring and developed more water than naturally flowed from it. He had also laid pipes from the spring to his house, and by that means conducted water thereto for domestic use. He had also been accustomed to water horses and cattle at the creek below the reservoir,

and, perhaps, above it. The evidence, however, failed to show that he had used all the water flowing in the spring and stream above the reservoir at all times for a period of five years prior to the commencement of the action. The defendant himself testified that "there was water sometimes that I did not use at all during the months of August and September." The defendant's wife testified, in speaking of her husband's use of the water: "He only used the water two different periods of the year; when he is not using it for irrigation it runs in the creek."

The foregoing evidence is undisputed, and is inconsistent with the finding of the court to the effect that for more than six years the defendant had adversely diverted and used all the waters of the spring and creek above the reservoir. Indeed, the evidence goes no farther than to show that the defendant had been making such reasonable use of the water for domestic purposes and for irrigation as he was entitled to do by reason of his being a riparian proprietor. The riparian owner, so long as his use of the water is within his rights as such riparian owner, gets no right or interest in the water additional to his riparian interest, even though such use extend for a period beyond five years. A use of the water strictly within his legal rights, and with which no other person has a right to interfere, cannot be called an adverse use for the purpose of conferring a property right or ownership in the water, under the statute of limitations. It is clear then that the defendant was not the owner of the water by adverse use. It is also plain that he was not the "owner" nor entitled to the "exclusive use" of the water by virtue of being a riparian proprietor. As such riparian owner the water was parcel of the land, and he as against other riparian owners was entitled only to a reasonable use of the water upon the riparian lands, with no power to convey it elsewhere to the detriment of the riparian owner below him on the stream. Even if we were to admit that the defendant had acquired a right as against the lower riparian proprietor by adverse use, still that right would be measured by the use that the water had been put to, and the defendant here would still not be the absolute owner of the water, to do with it as he pleased, nor would he be entitled to the use of it to any greater extent than he had already used it. This is illustrated in the recent

case of *Southern California Investment Co.* v. *Wilshire,* 144 Cal. 68.

Nor can it be said that the defendant owns "all the waters" flowing above the reservoir by reason of the fact that the waters of the spring percolated in the soil and the flow therefrom had been increased by digging out the spring.

It must be admitted from the record that before the defendant worked upon this spring at all the waters found their way, in some measure at least, from the spring to the channel of the creek and flowed down the latter to plaintiffs' land. It may be that the fact that the defendant as a riparian proprietor had worked upon the spring and increased its flow would entitle him to a greater portion of the water on a fair division of the same than would otherwise fall to his lot. But he certainly did not by increasing the flow become the owner of all the flow. Nor was he the owner in any sense except as a riparian proprietor of any water which naturally found its way from the spring to the creek. And this is so whether the water percolated directly into the creek through the soil or reached the creek in one or more running streams. The spring supplying the stream was itself a part of the stream, and the defendant had the same right in the spring and no greater right therein than he had in the stream below. He had no different or better right to cut off the water in the spring or above the spring than he had to cut it off or divert it from the stream. Any interference with the supply of the stream was an interference with the lower riparian owner's right to have the water continue to run in the stream to his land. The defendant was entitled only to a reasonable use of the waters of all parts of the stream including the spring; the part of the judgment complained of gives him more than this and is wrong.

The appeal of the defendant is also well founded, at least in part. It is not consistent with the law of riparian rights in this state to enjoin a riparian owner from "obstructing in any wise" the riparian stream. It is necessary that he should "obstruct" it, in some measure at least, in order to make any use of the water either for irrigation or for domestic or house use. At certain stages of so small a stream as this, even the watering of a few cattle might consume the entire stream and thus obstruct and prevent the flow thereof down to plaintiffs'

land. It has been said by this court that an upper riparian
owner cannot consume the entire stream to the detriment of a
lower landowner on such stream. And this as a general rule
is undoubtedly correct, but it has its limitations. When the
flowing stream, if all allowed to remain in the channel, will
not reach the lands of the lower proprietor, the lower· pro-
prietor cannot be justly called a riparian proprietor at all.
There is no stream of water flowing or that would flow through
his land if left unobstructed. Hence he cannot be injured and
cannot be heard to complain if the proprietor above him di-
verts or consumes all the water that he finds running on his
own land.

Again, a stream running through two pieces of land might
be of such a character that if the upper riparian owner made
any use of it at all it would be rendered useless to the owner
lower down on the stream; under such circumstances we do not
think that the upper owner should be deprived of *all use* that
the lower owner or owners may have *some use* of it. We think
it should be conceded that there are some circumstances under
which the upper riparian proprietor may divert and consume
the entire stream for a time at least, without committing any
actionable wrong against the lower proprietors.

In this class of cases the decree of the court should be made
to fit the stream that it applies to, and as a general rule when
the stream is small the parties can best be served by giving
them the alternate use of the entire stream. The stream in
this case was less than two miner's inches on the land of plain-
tiff by actual measurement when all the water from every
source was flowing into it. The evidence shows that during
the irrigation seasons or periods the defendant had been ac-
customed to take and use all the water flowing down to his
reservoir in the stream, and that he had been doing this for a
period of upwards of five years. Of course, he is entitled to
continue this use. It is impossible, however, to frame a decree
on the evidence before us, as it does not show the extent or
duration of these periods of irrigation, when they begin, and
when they end. The stream in this case, together with the
various springs supplying it, should have been treated as a
unit, instead of being divided into the waters above and the
waters below defendant's reservoir. An equitable division of
the entire water between the parties is the only practical solu-

tion of the case. The evidence in the case, however, is so uncertain and incomplete that no decree of practical benefit to the parties can be based upon it.

The part of the decree that neither party recover costs was a matter within the equitable discretion of the trial court. (Code Civ. Proc., sec. 1025; *Abram* v. *Stuart*, 96 Cal. 235.) But inasmuch as the case must go back for another trial it is unnecessary for us to determine here whether the discretion was properly exercised.

We advise that the entire judgment be reversed.

Cooper, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the entire judgment is reversed.

Van Dyke, J., Shaw, J., Angellotti, J.

Hearing in Bank denied.