[L. A. No. 1861.    Department Two.—August 16, 1907.]

## E. G. COHEN, Appellant, v. LA CAÑADA LAND AND WATER COMPANY et al., Respondents.

WATER DEVELOPED BY TUNNELS—FINDINGS—EVIDENCE.—In an action to restrain the diversion of certain waters of which the plaintiff claimed to be the owner, and for damages, the evidence, being conflicting, is held sufficient to sustain the findings to the effect that the waters developed by the tunnels of the defendants, and thence diverted by them, were not waters to which the plaintiff had any right either as an appropriator or as a riparian owner.

ID.—RETRIAL—ISSUE OF FACTS—SUFFICIENCY OF EVIDENCE.—On a retrial questions of fact raised by the pleadings are again at issue, and the sufficiency of the evidence to sustain the findings thereon is to be determined from a consideration of the evidence then introduced.

ID.—TUNNEL ON LAND OF ANOTHER—OWNERSHIP OF WATER—TRESPASS.—The fact that the defendants' tunnel had its commencement on, and partly ran through, the land of the plaintiff until it reached the source of water supply on the defendants' lands, and that the waters there developed were conducted by the defendants through such tunnel, does not make plaintiff the owner of the waters developed on the defendants' lands, notwithstanding the defendants may have been trespassers in so constructing and maintaining the tunnel.

ID.—DIVERSION OF WATER FOR USE ELSEWHERE—WANT OF DAMAGE.—While the waters of a stream or percolating waters cannot be taken away from the lands on which they flow, or from lands upon which they are found, for use elsewhere, if the result of such taking would be to injuriously affect adjoining property-owners, still if no such results would follow by the taking and use elsewhere of the

waters, no limitations should be placed upon the right of one de-- veloping them as to their use.

APPEAL from a judgment of the Superior Court of Los: Angeles County and from an order refusing a new trial.. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

J. J. Scrivner, Alfred H. Cohen, and Lawler, Allen & Van, Dyke, for Appellant.

Munson & Barclay, W. S. Wright, and Anderson & Ander-- son, for Respondents.

LORIGAN, J.—This action was brought to restrain the defendants from diverting and carrying away certain waters. of which plaintiff claimed to be the owner and for the recovery of damages for such diversion.

Judgment went for the defendants, and this appeal is taken therefrom, and also from an order denying the motion of plaintiff for a new trial.

The main question on this appeal is addressed to the sufficiency of the evidence to sustain certain findings of- the court.

Referring first to the general features of the case as disclosed by the evidence before referring particularly to the findings: It appears that about 1891 one Mrs. Gould became the owner of a tract of land containing one hundred and sixty acres, situated at La Cañada, in Los Angeles County. This tract, sixty acres of which was useful for agricultural purposes, embraced the lower portion of what is known as Snover Cañon, and extended some distance up it. At the time of her purchase there was lying contiguous to and northerly of this tract of one hundred and sixty acres a forty-acre tract of unappropriated government land of the United States, extending across the cañon, and on this tract were several small springs. This forty-acre tract was worthless for agricultural purposes. In 1891 and 1892, while said forty-acre tract was still unappropriated public land, Mrs. Gould appropriated the waters of said springs, conducted them by pipes to her house and lands, and used them for irrigation and domestic purposes. Subsequently, and in 1899, the present

plaintiff became the owner of said one-hundred-and-sixty-acre tract, together with its appurtenances. In the years 1898 and 1899 the predecessors of defendants went upon said forty-acre tract and with the assent of those who in the meantime had acquired title thereto from the United States government dug several tunnels thereon and conducted the waters obtained thereby to lands belonging to them some two miles distant, for the purpose of irrigating their lands and selling the surplus waters to their neighbors.

The plaintiff thereupon brought this action, the amended complaint having been filed in 1904, claiming that the defendants had, by constructing such tunnels, intercepted and diverted the waters of the springs, the right to which she and her predecessors had prior thereto acquired and owned by appropriation and use.

Presenting this as the general situation, we now come to a more particular consideration of the findings made by the court bearing on the controversy between the parties relative to the waters of such springs.

The court found that the springs referred to in the complaint were situated, two of them, in or near the thread of the cañon and two on the steep mountain-side thereof, which springs, for convenience' sake, may be designated as springs numbers 1, 2, 3, 4. And it may also here be mentioned that the tunnels involved are designated upon the plat filed in evidence as tunnels 2, 3, 4, 6, 7. The area of the watershed of Snover Cañon is about three fourths of a mile square; the area above the tunnels the construction of which are involved here amounting to about two hundred acres. Relative to the springs, it was found that as they existed in 1896, the waters therefrom, if not diverted, would flow in a small stream upon the lands of the plaintiff for a short distance, but that since 1897 there had not been sufficient water issuing from said springs during the irrigating seasons to form a stream, or flow over and upon the lands of plaintiff, and that no stream had flown thereon, and aside from the waters of said springs no stream would flow, or has flowed, down said cañon except a temporary flow caused by rainfall; that the predecessor of plaintiff appropriated the waters of said springs in 1891 and 1892, and in the early part of the irrigating season of 1893 conducted said waters to the extent of

one and three-quarters inches to a reservoir constructed by
her, but from said date, owing to the effects of fire and of
drouth and other natural causes, the flow from said springs
steadily diminished, so that at the time the defendants and
their predecessors began the work of constructing tunnels in
said cañon in 1898 one of said springs had entirely ceased
to flow, others had greatly diminished, and the total amount
supplied by said springs had been reduced to less than one-
half inch of water, miner's measurement, constant flow; that
the tunnels constructed by respondents were constructed by
and with the consent of the owner of the said forty-acre tract,
upon which said springs were found; that by means of said
tunnels certain waters were developed near and at the end
or face of said tunnels; that all of the waters so found and
developed were and are percolating waters which issue from
the seams and fissures of the granite dyke, or wall, in which
the same were found, and none of said tunnels intercepted
any known stream of water running in any defined channel;
that said tunnels were run in the vicinity of and at points
below the plane of said springs, and one of said tunnels is
at one point near its mouth directly under one of said springs,
on the side of the cañon, but said tunnel is seventy-five feet
long, and is in granite strata, and the waters therein are
found within eight feet of the face thereof; that neither of
the other tunnels is under a spring; that the said tunnels are
run nearly at right angles with and away from the thread of
the cañon, and the water which issues from said tunnels
was found in granite dykes which cross said cañon, the strata
and main seams of which stand almost perpendicular; that
said springs were not and are not, nor is either of them, fed
by any known stream running in a defined channel; that no
part of said waters which were developed or found in said
tunnels would, if said tunnels were not there, issue from said
springs or either thereof, or feed or support the same in any
way, and no part of said waters found or developed in said
tunnels would, if said tunnels were not there, find its way
into the Snover Cañon so as to feed or support in any way
any stream, either surface or subflow, in said cañon, but
said waters of said tunnels would, except for said tunnels,
disappear into the crevices of the mountains and be lost; that
said springs have not, nor has either of them, been destroyed

by the defendants or any of them; that the amount of water found or developed in said tunnels upon said forty-acre tract was about 1.50 of an inch of water measured under a four-inch pressure, and the said flow of said tunnels has not increased during the irrigating seasons since the construction thereof; that the lands upon which the defendants have used the water of said tunnels are not riparian, and do not abut or adjoin the lands upon which said springs and tunnels are situated, or the lands of plaintiff, or the lands upon which the waters from said springs would naturally flow.

We have set forth these findings of the court as applicable to all the springs referred to in the complaint and the various tunnels run by defendant which are claimed to have diverted the water therefrom. This appeal, however, involves only springs numbers 3 and 4 and tunnels 2, 6, and 7. Tunnel 6, it is claimed by appellant, diverts the waters of spring number 4, and tunnel number 7 the waters of spring number 3, and the court having found that these tunnels did not divert the waters of either of said springs, the main question arising now is concerning these particular springs and tunnels and the sufficiency of the evidence to sustain the findings relative to them. Nothing with reference to other tunnels constructed by defendants is involved on this appeal, as far as the diversion of waters of other springs is concerned, although a question as to the rights of appellant to the waters developed by the construction of tunnel number 2 is presented. That, however, does not involve the waters of any spring, and there is no dispute as to the sufficiency of the evidence to sustain the finding relative to it. It presents purely a question of law, arising from the finding as made by the court concerning it and the evidence on which it was based. It appears that this tunnel number 2 was commenced on the land of appellant, ran in a northerly direction about eighty feet through her lands and then upon the land of respondents, and near the face of the tunnel upon the land of respondents water was developed which was conducted in a pipe-line through the tunnel to another pipe-line on the land of respondents. The court found as to said waters that said tunnel did not intercept or cut off any of the waters of any of said springs, and none of the waters which were found or developed in said tunnel would, if said tunnel were not there, issue from

said springs, or either thereof, or tend to feed or support said springs, and no part of said water would find its way into Snover Cañon so as to feed or support any stream, but such water so found or developed would, except for said tunnel, be lost and disappear into the crevices of the strata in which they were found.

As conclusions of law the court decided from these findings that as far as tunnels 6 and 7 were concerned the defendants were entitled to all the waters developed by their construction, and as to tunnel 2 that the respondents were entitled to all waters issuing from adjoining rocks in that portion of the tunnel constructed on the lands of respondents, and plaintiff to all water issuing into said eighty feet of said tunnel from her land.

Many other findings were made by the court as to other springs and other tunnels and on the subject of damages, the court finding as to the latter that any damages sustained by plaintiff or her predecessors were caused through failure on their part to either obtain an adequate water supply from the springs or through their own negligence in applying such water as they had to the irrigation of their premises, and not to any action on the part of defendant. On the subject of damages the findings and conclusion of the court are not seriously questioned, and, we are satisfied, could not be under the evidence. So, as we have said, no questions arise in the case save as to springs 3 and 4 and tunnels 2, 6, and 7.

Now, as to the claim of appellant that the evidence was insufficient to warrant the findings of the court relative to the construction of tunnels 6 and 7. The findings as to the waters obtained by the construction of these tunnels were in effect that such tunnels did not intercept any stream of water running in any defined channel, nor any water which would feed any stream, either surface or subflow, in said cañon; that the waters which were obtained by the construction of said tunnels were new or developed waters found in formations in the mountain differing from those existing in the vicinity of the springs; that such waters were developed at or near the face of the tunnels and were waters percolating through seams and fissures in granite dykes intercepted by the tunnels at long distances back in the mountain-side from the springs; that such waters would not, even were the tun-

nels never dug, support or feed said springs, or issue therefrom, but would follow the crevices of the strata through which they were percolating and be lost.

The appellant's contention is that the evidence does not support such findings, either as to the source or trend of these percolating waters; that the formation through which said tunnels were driven is of a broken and seamy granite character saturated with water, which percolating through the broken rock supported and fed these springs; that the driving of these tunnels in the mountain in the vicinity of these springs did not develop any water existing in other formations or whose trend would not reach the springs, but the direct effect was to penetrate the saturated body of earth through which the waters feeding the springs flowed, or which supported the flow of water thereto, and to draw such waters into the tunnels, with the result that the springs dried up.

But the principal controversy at the trial was as to whether these waters were percolating waters, the natural flow of which but for the interference of the respondents' tunnels would have fed these springs, or were they waters percolating through fissures in the mountain and developed by the construction of these tunnels from sources entirely disconnected with, and separate and distinct from, the sources from which the springs in controversy were supplied. Very much of the evidence in the case was addressed to this question and was largely made up of the testimony of expert witnesses—civil and hydraulic engineers—called on both sides. The views of the witnesses called to this point were widely divergent on the subject. Some were confident that the waters which supplied the springs, and were taken by the tunnels, were found in the same formation or material which consisted of a saturated mass of earth extending into the mountains; that from and through this mass the waters in their natural flow percolated and fed the springs, and that the effect of driving the tunnels was to drain into them the waters from this saturated mass and from no other source; that the waters which fed the springs and flowed in the tunnels belonged to this same body of saturated earth, and had the same water plane, and the draft on it by the tunnels had the direct effect of drying up the springs. Others were equally confident that

the waters obtained by driving the tunnels were not waters obtained by the penetration of any saturated plane through which the springs were supported, or any saturated plane at all, but were obtained by running the tunnels into the mountain until they struck granite walls through the seams or fissures of which water percolating was intercepted and taken into the tunnels, and which water but for its interception by the tunnels would have gone in a natural course into the depths of the earth and would never have flowed towards the springs, but, on the contrary, would have continued in a different direction and away from them. In this condition of the evidence it is apparent that whatever conclusion the trial court reached must be resolved out of a conflict of the evidence. While this conflict is obvious from an inspection of the record, we have the opinion of the judge of the trial court presented in the transcript, in which he notes the conflict, refers to it, and gives his conclusion drawn from it and subsequently embodied in the findings.

In that opinion the court said: "Aside from matters disposed of at the trial by rulings on the admissibility of evidence, the questions of fact to be decided by the court now are, whether the defendants, by the said tunnels, divert water to which the plaintiff has a better right by virtue of said appropriations or by virtue of her riparian privileges.

"The defendants, by the construction of tunnels in 1898, did not at that time deprive Mrs. Gould or the plaintiff of any of the said appropriated water. The water yielded from the tunnels has not increased since that time. Plaintiff is now enjoying the use of as much water as she or Mrs. Gould did at the time of the construction of the tunnels. The amount of this appropriated water is less than previously, but the decrease is not due to acts of the defendants or their predecessors, or any of them.

"The other question, whether the water abstracted by the defendants would, if not interfered with, flow as an underground stream or by percolation and thus reach the plaintiff's land, is not so easy of determination.

"The cañon is fan-shaped, as is usually found in mountains of southern California; the sides of the cañon are very precipitous and covered to a considerable extent with vegetation. The bottom of the cañon is filled up to some extent with

detritus and is moist, and at the lower end is covered by a dense growth of vegetation common under similar conditions in southern California.

"The earth's formation here is cyanite (resembling granite), folded by volcanic action into layers of more or less regularity and continuity. These layers rest at an angle of eighty degrees or more (sometimes nearly perpendicular), and dip towards the south. Between the layers the main seams or fissures trend east and west and downward to an unknown but presumably great depth. These layers, as they near the surface, are somewhat decomposed and also broken, so as to form many irregular fissures in every direction. The rock lying at a greater depth is also more or less broken, but the fractures are quite well defined.

"Several experts testified in the case for each side, giving an opinion as to the course of the water known to be within the watershed of the cañon. Those on behalf of the plaintiff contend that all of the water taken by the defendants, if not interfered with, must find its way out of the cañon through the plaintiff's land; that such is the usual course of water in the cañons of southern California, and that this is not an exceptional case. The experts testifying for the defendants take a radically different view, and insist that such water would pass out of the cañon through the main seams or fissures behind the rocks without coming in contact with plaintiff's land; that the water taken by the defendants by means of tunnels is water passing through the fissures behind the layers of rock, and, except the same was thus intercepted, would pass out of the cañon and find its way to the surface at some distance from plaintiff's land without passing through it, or would follow the vertical seams to a great depth contributing to form the great body of subterranean water observable in all mining operations; that the water known to be within Snover Cañon watershed is greater than could exist from the rainfall alone, and that the excess must come from other watersheds, accounting for this, by the peculiar formation at this point.

"From the evidence I am unable to conclude that the plaintiff has met the requirements by proving by a preponderance of evidence that she is deprived by the defendants of any of the appropriated water or any to which she may assert rights

as riparian waters; but, on the contrary, I am constrained to find that the water which the defendants are taking is 'developed' water abstracted from their own land, and which, if not so taken, would be of no benefit to the plaintiff either directly by flowing on to her lands or by forming a support for other water which would so flow; and, from the evidence, find that, except for the fact that it was intercepted in the manner employed by the defendants, it would be entirely lost.''

This conflicting condition of the evidence with reference to the main point in controversy between the parties to which the trial judge called attention in his opinion—the source from which the waters taken by the tunnels was diverted—is amply borne out by the record, and is sufficiently pointed out there so as to obviate any discussion by us upon the subject, which could only amount to detailing the evidence which raises it without accomplishing any other result than to make it apparent that such conflict exists. The opinion sufficiently refers to the evidence out of which it arose, and as the record shows that there was in fact a conflict in it, the familiar rule applies that a finding by the trial court based on conflicting evidence is not subject to review by this court.

In this connection it may be said that this case was here before,—*Cohen* v. *La Cañada etc. Co.,* 142 Cal. 437, [76 Pac. 47]. While it appears from an examination of the decision on that appeal that the trial court found ''that part of said waters which were developed in said tunnels would, except for said tunnels, have found its way by some unknown subterranean stream to said springs and been discharged therefrom,'' still on the appeal the only question was as to the correctness of the rule relative to percolating waters applied by the trial court to that and other findings. It was held that the rule applied was wrong and the cause remanded for a new trial. It is not important to a consideration of the present appeal that upon a previous trial the court made a different finding from the one made on the last trial as to the source of the waters developed by said tunnels. It is probable that upon the first trial counsel for the defendants, believing the law as they then contended for, and as the court applied it, to be that percolating waters were part of the soil and could be removed by the owner of the land at pleasure and without consideration as to the rights of plaintiff as an appropriator

CLI Cal.—44

of the water of the springs, did not devote as much evidence to prove that the source from which the tunnels were supplied was different from that which fed the springs. Under the rule of law as contended for by the defendants upon the first trial, if it were the correct rule, as they then believed it to be, it was immaterial from what source the waters came as long as they were percolating waters. Or it may be, as asserted by respondents in their brief, and not questioned in the closing brief of appellant, that much additional evidence, both of expert engineers and others familiar with conditions in Snover Cañon when the tunnels were constructed, was introduced by the defendants on the second trial. In any event, it was a question of fact again at issue on the second trial as to the source of said waters, and the sufficiency of the finding upon it is to be determined from a consideration of the evidence then introduced, which, as we have said, was sufficient to sustain it.

Now, as to tunnel number 2. It is contended by appellant that because this tunnel commenced on her land the waters brought through it by respondents belonged to her. It is not claimed that the construction of this tunnel affected the water supply of any spring claimed by appellant. Her position is that as the tunnel commenced on her land, and is cut through it for a distance of eighty feet till it runs into the land of respondents, and respondents conduct through it for that distance water developed upon their own land, that appellant is entitled to said waters, notwithstanding they are not found anywhere within the eighty feet of tunnel through her land, but wholly on that of respondents. Counsel for appellant content themselves with the assertion that appellant is entitled to said water, but refer to no principle of law upon which their claim is based, and of course cite no authority which supports any. Whatever appellant's claim may be against respondents for trespass upon her land in the construction of said tunnel, and their right to maintain a pipeline through it, certainly the fact of such trespass and the use of the eighty feet of tunnel as a conduit, did not give appellant the right to the waters developed on respondents' own land. The right of respondents to this water follows from their development of it on their own premises, and control and conduct of it through their pipes. It is immaterial to any ques-

tion of ownership of the waters that respondents are tres-
passing upon the lands of appellant in conveying them from
the point of development on their land through her land
to their pipes at another point.   Respondents may be guilty
of trespass to the extent claimed by appellant, but the penalty
for such trespass is not to deprive respondents of their owner-
ship of waters taken from their own property.   In its decision
the trial court gave appellant all the waters which might per-
colate into the tunnel along the eighty feet of its construction
on her property, and, so far as ownership of waters developed
by the construction of this tunnel was concerned, this was
all to which she was entitled.   She was not entitled to have it
adjudged that waters developed on respondents' land belonged
to her, from the mere fact that it was piped through her land
without her permission.

This disposes of all matters relative to the construction of
said tunnels, or their effect upon the springs.

We come now to the last point made by appellant.   It will
be noticed that the court found that the land upon which the
respondents have used the waters from said tunnels are not
riparian to and do not abut or adjoin the lands upon which said
tunnels are situated, and it is insisted by appellant that though
the waters developed by said tunnels were not part of the
waters supplying said springs, or waters which would have
reached Snover Cañon by percolation or otherwise, neverthe-
less the respondents were only entitled to use such waters upon
the lands where they were developed; that the waters could be
applied and used by respondents upon their forty-acre tract,
where they were developed, and could not be taken for use to
other lands.

In support of her position the broad proposition is con-
tended for that percolating waters can never be taken away
from the land where they exist, although adjoining proprietors
are not injured or damaged thereby, and it is asserted this
rule finds support in the decisions of this court in *Katz* v.
*Walkinshaw*, 141 Cal. 116, [99 Am. St. Rep. 35, 70 Pac. 663,
74 Pac. 766]; *McClintock* v. *Hudson*, 141 Cal. 275, [74 Pac.
849]; *Southern California I. Co.* v. *Wilshire*, 144 Cal. 68, [77
Pac. 767]; *Montecito Valley Co.* v. *Santa Barbara*, 144 Cal.
578, [77 Pac. 1113]; and *Gutierrez* v. *Wege*, 145 Cal. 730, [79
Pac. 449].   But these cases do not lay down the doctrine as

broadly as appellant contends for. They lay down the rule that waters of a stream or percolating waters cannot be taken away from the lands on which they flow or from lands upon which they are found for use elsewhere, where the result of such taking would be to injuriously affect adjoining property-owners. The principle which enters into this rule is the protection to be given the superior natural rights of adjoining property-owners to the flow and use of such waters. Where, however, there can be no injury worked to such adjoining owners by the taking and use elsewhere of such waters, no limitations should be placed upon the right of one developing them as to their use.

In the case at bar the waters which were secured by the construction of these tunnels of respondents were not waters which but for their interception would have reached any stream in Snover Cañon, or which would have reached or supported any of the springs in question in the case. They were not waters which would follow the natural watershed of the cañon and have trended down in the cañon by way of the springs or otherwise. They were waters trending through the fissures of the granite dykes away from the direction of the natural watershed of Snover Cañon, and would never have reached it nor reached the springs in question, but, if uninterrupted in their flow, would have continued down through the strata in which they were percolating, and in their natural flow would, as the experts testified and the court found, have passed down into the crevices of the mountains and been lost. Under these circumstances, as the waters developed by the tunnels were not waters which would have trended towards or supported or affected any stream flowing by the land of appellant, nor any springs in or to the waters of which she had any claim or interest, she was not injured as an adjoining proprietor or as an appropriator, and hence could not complain or insist upon the application of the rule announced in the cases cited to prevent the respondents from taking such developed waters to any lands to which they might see fit to conduct them. For authority sustaining this proposition we cite *Hansen* v. *McCue*, 42 Cal. 306, [10 Am. Rep. 299]; *Gould* v. *Eaton*, 111 Cal. 639, [52 Am. St. Rep. 201, 44 Pac. 319]; and *Montecito etc. Co.* v. *Santa Barbara*, 144 Cal. 585, [77 Pac. 1113].

There are other points made by counsel for appellant and referred to in their brief. They are, however, simply referred to and are not discussed. We have examined them, and do not think them tenable or that they merit particular reference or discussion.

The judgment and order appealed from are affirmed.

McFarland, J., and Henshaw, J., concurred.