[Civ. No. 1812. First Appellate District.—February 26, 1918.]

## S. O. HOLMES, Appellant, v. SNOW MOUNTAIN WATER & POWER COMPANY, Respondent.

NEW TRIAL—ORDER DENYING RIGHT TO NOMINAL DAMAGES—FAILURE TO LEAVE TO JURY—INSUFFICIENT GROUND FOR REVERSAL.—An order denying a new trial in an action wherein plaintiff is entitled to nominal damages, will not be reversed for the mere failure to leave such question to the jury.

WATER RIGHTS—INJUNCTION AND DAMAGES FOR DIVERSION—INTERVENTION OF PUBLIC INTERESTS—ESTOPPEL.—The right to an injunction and damages for diversion of the flood waters of a stream is barred by the intervention of public interest, where the plaintiff's predecessor in interest stood by while the defendant public service corporation expended over a million dollars in the erection of a dam, tunnel, and plant, and even assisted in some ways in the work by furnishing commodities which the defendant needed in the prosecution of its enterprise and also sold part of the land to defendant for a dam site, all of which plaintiff knew when he purchased the land while defendant was in the midst of the building of the dam and preparing to divert the waters, taken in connection with the additional fact that he waited four years after the public use began, and until thousands of people had become dependent upon it for light and power and necessary water for irrigation before bringing his action.

APPEAL from an order of the Superior Court of Mendocino County denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

R. M. F. Soto, for Appellant.

Thomas & Thomas, Robert F. Duncan, and Pillsbury, Madison & Sutro, for Respondent.

BEASLY, J., *pro tem.*—In the year 1908 the Snow Mountain Water & Power Company completed a dam on Eel River, in Mendocino County, by which it impounded and diverted a large part of the stream through a tunnel from the watershed of the Eel River to that of Russian River, none of the water being ever permitted to return to the Eel River watershed. The plaintiff Holmes owns land on both sides of Eel River

about two hundred feet below defendant's dam. The bluffs of the river on plaintiff's land are from forty to sixty feet high; the land itself is broken, and while some acres of it were cultivated to crops, and some other parts of it set to fruit trees, and other portions were capable of being cleared, cultivated, and also irrigated, none of the water of Eel River had ever been used at any time to irrigate any part of plaintiff's land, nor does plaintiff appear to have been at any time previous to the trial in a position to use the river water for irrigation. About four years after the completion of the defendant's dam and the beginning of the diversion of water plaintiff began this action, in which he asks that the company be enjoined from continuing to divert the water of Eel River; and also asks damages in the sum of five thousand dollars which he claims to have already suffered on account of the diversion of the water, and twenty-five thousand · dollars which he claims he will suffer in the future if the diversion is continued.

By the answer of the defendant it appears that the latter is a public service corporation; that the impounded water is used to generate electricity, which is sold to people in Mendocino and Sonoma Counties, and is also, after being run through defendant's power plant, used for irrigation in various portions of the upper Russian River valley. These facts do not appear in plaintiff's complaint, the plaintiff proceeding by that instrument against the defendant as if the latter was simply a private corporation trespassing upon his property rights by diverting the water from the river which flows through his property.

The plaintiff in his brief abandons, if he ever asserted, any right to either damages or injunction by reason of the diversion of the flood waters of the stream, saying therein that he is not claiming the flood waters of the Eel River. This narrows considerably the questions involved in this case. The evidence shows that of the 240 cubic feet per second of water which the defendant diverts all but ten cubic feet per second is impounded winter flood water; that the winter flow of the river is about fifty thousand cubic feet per second, which the dam accumulates in a two-mile reservoir for use in the dry season; that the natural flow during the dry season is but ten cubic feet per second, thus reducing the amount of water impounded after subtracting the impounded flood water.

The decree which the court entered secured to plaintiff two second-feet thereof, leaving to the defendant the right to impound eight second-feet of the ten—the normal flow of the river at times when not in flood. The evidence showed, and the court found, that these two second-feet were ample for all purposes of plaintiff; and, indeed, it is plain that this amount was a superabundance for his needs; and it is also found that the remaining eight second-feet as well as the flood waters were waste waters; that no part of the water of Eel River is ever used for irrigation, and that the defendant has never diverted any of the water of Eel River other than the waste waters thereof, and only such of the waste waters as had been at all times in the past and ever will be at all times in the future incapable of any reasonable or practical use in connection with the lands of plaintiff described in the complaint, or any part thereof; and that the plaintiff has never been and never will be damaged in any way by reason of any of the acts of the defendant complained of.

At the beginning of the trial the court impaneled a jury, and when the plaintiff rested his case discharged this jury from further consideration of the case.

The only purpose for which the jury could have been impaneled was for the assessment of plaintiff's damages. The plaintiff contends that the dismissal of the jury practically amounted to a nonsuit; and that, as he had established his claim for damages, the case should be reversed for this reason.

The evidence introduced by plaintiff to support his claim for damages consisted in the statements of five different witnesses to the effect that the arable land of plaintiff without irrigation was worth from five to ten dollars an acre, and that with irrigation it would be worth from $75 to $150 an acre; but the strength of this testimony vanishes when considered in the light of the foregoing facts, namely, that the amount of water left by defendant in the river was ample for plaintiff's uses; that plaintiff had never at any time used any of the water of Eel River for irrigation, and could not possibly use more than that supplied by the two second-feet still permitted to run, and that there is no evidence that the plaintiff had been injured in any way by the diversion of the water through destruction of his crops or failure to grow crops. Under the facts of this case no injury could be done plaintiff by the diversion of that portion of the water of this

cient flow of the stream for all his possible present and future
needs. (*Miller* v. *Bay Cities Water Co.,* 157 Cal. 256, [21
L. R. A. (N. S.) 772, 107 Pac. 115] ; *Cohen* v. *La Canada W.
Co.,* 151 *Cal.* 680, [11 L. R. A. (N. S.) 752, 91 Pac. 584] ;
*San Joaquin* v. *Fresno Flume Co.,* 158 Cal. 626, [35 L. R. A.
(N. S.) 832, 112 Pac. 182] ; *Stratton* v. *Mt. Hermon Boys'
School,* 216 Mass. 83, [Ann. Cas. 1915A, 768, 49 L. R. A.
(N. S.) 57, 103 N. E. 87].) We infer that the plaintiff
recognizes this situation, although he does not expressly say
so, for the reason that he argues very earnestly that in the
condition of the record he was entitled to at least nominal
damages under his case made in chief, and that it was error
on the part of the court to dismiss the jury. But conceding
that it is so, this court would not reverse this case for a mere
failure to leave it to the jury to bring in a verdict for nomi-
nal damages.

The plaintiff's predecessor in interest stood by while one
million three hundred thousand dollars of the defend-
ant's money was being expended in the erection of its dam,
tunnel, and plant. He even assisted in some ways in the
work by furnishing commodities which the defendant needed
in the prosecution of its enterprise, and he sold part of his
land to the defendant for a dam site. All this the plaintiff
knew when he purchased the land, which he did while the de-
fendant was in the midst of its work of building the dam
and preparing to divert the waters of the river. It is im-
possible that he did not know that the purpose of this enter-
prise was for a public use; that the defendant was about to
inaugurate a public service, and that the waters of the river
when diverted would be used for the purposes to which it was
afterwards put. In view of these facts, and of the fact that
he waited four years after the public use began, and until
thousands of people had become dependent upon it for light
and power and necessary water for irrigation, his right to
an injunction is barred by this intervening of the public in-
terest. (*Katz* v. *Walkinshaw,* 141 Cal. 116, [99 Am. St. Rep.
35, 64 L. R. A. 236, 70 Pac. 663, 74 Pac. 766] ; *Miller & Lux*
v. *Enterprise Canal etc. Co.,* 169 Cal. 415, [147 Pac. 567] ;
*Fresno etc. R. Co.* v. *Southern Pacific R. Co.,* 135 Cal. 202,
[67 Pac. 773] ; *Southern California Ry. Co.* v. *Slauson,* 138
Cal. 342, [94 Am. St. Rep. 58, 71 Pac. 352] ; *Crescent Canal*

*Co.* v. *Montgomery,* 143 Cal. 248, [65 L. R. A. 940, 76 Pac. 1032]; *Newport* v. *Temescal Water Co.,* 149 Cal. 531, [87 Pac. 372]; *Barton* v. *Riverside Water Co.,* 155 Cal. 509, [101 Pac. 790]; *Gurnsey* v. *Northern California Power Co.,* 160 Cal. 699, [36 L. R. A. (N. S.) 185, 117 Pac. 906]; *Burr* v. *Maclay etc. Co.,* 160 Cal. 268, [116 Pac. 715]).

This disposes of the case, and it will not be necessary, therefore, to notice numerous other points made by the defendant in support of his judgment. .

The order denying the motion for a new trial is affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 25, 1918.