[Sac. No. 4904.   In Bank.—August 29, 1935.]

L. MINI ESTATE COMPANY (a Corporation) et al., Appellants, v. THOMAS WALSH et al., Respondents.

Dunnell, van der Zee & Wollenberg and Harlow V. Greenwood for Appellants.

Hadsell, Sweet, Ingalls & Lamb and Thomas C. Anglim for Respondents.

SHENK, J.—The plaintiffs appeal on the judgment roll alone from a judgment for the defendants in an action to enjoin the alleged wrongful diversion of the waters of American canyon creek and Wilson ranch creek. The grounds of the appeal are that the findings are indefinite, contradictory and inconsistent and do not support the judgment, and that the court should have found the amount of the usual and customary flow of the streams to which the parties were respectively entitled.

American canyon creek is a natural stream in Napa County which rises in and is fed partly by drainage and partly by springs issuing from the north side of the watershed known as Sulphur Mountain block. The stream flows westerly through the defendants' and others' lands in a meandering course and reaches the lands of the plaintiffs. The waters of Wilson ranch creek head in a small marsh in the hollow of a hill on the easterly portion of the defendants' lands and are fed by leakages through springs and marshes moistened by a vast underground reservoir of water which, due to the porous nature of the soil, has accumulated through the ages within the mountain adjoining the defendants' lands on the east. From this head the channel of Wilson ranch creek flows along the western base of the mountain through the lands of the defendants and thence into the lands of the plaintiff. The distance from the marsh at the head of Wilson ranch creek to the easterly boundary of the plaintiffs' lands is about 400 yards. The streams have their confluence on the plaintiffs' lands and thence continue in one channel to Napa Bay.

The plaintiffs' lands consisting of several hundred acres are used for the raising of livestock and the plaintiffs require water for their stock and for domestic use. Twenty acres of

the defendants' lands are devoted to the raising of vegetables under a cropping lease.

Prior to 1919 a hole had been dug in the marsh on the defendants' lands for the development and collection of water and water flowed from it into the channel of Wilson ranch creek, but it had since filled up and returned to marsh. In 1926 the defendants dug another hole about 35 feet away in the side of the mountain and began the development of water to be used for irrigating their lands and crops. When water from that source was not used for irrigating it was allowed to run into Wilson ranch creek by means of a channel cut through the marsh for that purpose. In May, 1933, the defendants cut in the marsh a hole or sump 18 feet long, 6 feet wide and 8 or 10 feet deep and through a drain cut in the channel of Wilson ranch creek collected the water developed from the side of the mountain. The water thus collected in the sump was raised into wooden tanks by electric pumps and stored for use in irrigating the vegetable crops.

Prior to May 20, 1933, the defendants also developed water from the American canyon creek by inserting into the bank a piece of corrugated iron pipe and pumping the water into storage tanks.

The plaintiffs brought the present action on May 31, 1933. They alleged in their complaint that by the use of said pipes, pumps and drains, the channels of the streams became dry and the defendants deprived the plaintiffs of the use of the usual and customary flow of the water. The plaintiffs sought an injunction and damages, which were denied them by the judgment of the court.

The court found that the lands of both the plaintiffs and the defendants described in the complaint and claimed by them respectively were riparian to both streams; that formerly the level of the water in the vast mountain reservoir was very high but that the underground water supply was greatly depleted in 1929 by the operations of a mining company which opened a great hole in the base and that this excavation tapped the underground reservoir; that later the hole was closed and since then the level of water has steadily risen and will continue to rise under natural conditions to the full capacity of the mountain reservoir; that the lowering of the water level dried many of the springs high on the mountain which were the partial source of supply of water in American

canyon creek and which would flow again when the reservoir reached its full capacity in future seasons. The court found that the acts of the defendants had no effect upon the level of water in the mountain since the quantity of water thus taken was not appreciable in amount compared with the steady rise of water in the vast reservoir, and further that none of the water developed from the bank of American canyon creek would ever reach the plaintiffs' lands even if it were not pumped from said hole but were allowed to run into and down the channel; and "that it is not true that by reason of said acts of said defendants the waters of American canyon creek do not now reach or flow in said creek upon the plaintiffs' lands", and that "it is not true that by reason of said acts" of the defendants, American canyon creek has become dry, but that said creek became dry as far up as the defendants' lands commencing in the latter part of May or early June in each year until late fall by reason of the destruction or diversion of a spring, known as Rindler spring, lying farther up the watershed of American canyon creek, and by reason of the lowering of the subsurface water level; "that the drying up of said American canyon creek has been due to shortage in rainfall and to the drying up of springs on the headwaters of American canyon creek, due both to years of shortage in rainfall and to works of men with which none of the defendants has been connected".

As to Wilson ranch creek the court found that the course of its channel from the marsh to the plaintiffs' lands "is tortuous and in many places shallow and of considerable width and for many years last past has been choked with reeds, grasses and tules and has been of such character that during the late spring and throughout the summer months, the small amounts of water originating in said marsh would not and cannot flow down to the lands" of the plaintiff; "that from time immemorial said marsh has exuded a very small amount of water at the lower end thereof into the channel of said Wilson Ranch Creek during the late spring and throughout the summer months, and until the heavy rains begin in the fall of the year". The court found specifically that the water developed by the defendants is entirely in addition to any water that would otherwise flow in Wilson ranch creek from the marsh and that the development of water from the side of the mountain and the collection of that water in the sump has not

reduced the quantity of water which would otherwise exude from the marsh into the channel of Wilson ranch creek. The findings state: ''It is not true that by reason of said acts of said defendants the waters of said Wilson Ranch Creek do not now reach or flow in said creek upon the plaintiffs' lands'' and ''that it is not true that by reason of said acts of defendants the channels of Wilson Ranch Creek . . . have become dry and no water flows therein.'' It is further stated in the findings that the causes of shortage of water in Wilson ranch creek are shortage in rainfall and the drying up of springs, and ''conditions arising in the channel of said creek with which none of the defendants has had anything to do''. The court further found that such diversion of the waters by the defendants was without the consent of the plaintiffs and that the defendants threaten to and will continue to divert waters from the channels of the respective streams but only in the manner described in the findings; that such acts of the defendants have not caused any damage to the plaintiffs.

The court found against the defendants on the issue raised by an alleged affirmative defense of a prescriptive right to the use of the waters hereinabove mentioned.

█ The foregoing summary of the facts found is sufficient to demonstrate that there is no merit to the contentions of the plaintiffs that the findings are uncertain or contradictory or insufficient to support the judgment. It may be assumed from the record that some of the natural flow of the streams during the season of 1933 was diverted by the defendants. Nevertheless the findings show clearly and sufficiently that the amount of the natural flow in that season was not sufficient, even if allowed to pass into the channel, in the course of nature, to reach the plaintiffs' lands. Furthermore, the findings are sufficiently specific that the drying up of the stream commencing in May of the year 1933 was not due to any acts of the defendants. Reliance upon the case of *Morris* v. *Bean,* 146 Fed. 423, 436, can avail the plaintiffs nothing. The investigation there was whether the evidence supported the finding that the waters diverted by the defendants would not in the course of nature reach the plaintiffs' land, and it was held that the finding was not supported because the evidence showed that the drying up of the creek was coincidental with the defendant's diversion. In the present

case the question whether the findings are unsupported is not before us.

The plaintiffs concede that the defendants were entitled to retake from the channel of the streams any water developed by them and which would not constitute any part of the natural flow of the stream. That concession is consonant with the decisions in *E. C. Horst Co.* v. *New Blue Point Min. Co.*, 177 Cal. 631 [171 Pac. 417], *Churchill* v. *Rose*, 136 Cal. 576 [69 Pac. 416], and similar cases. The court concluded in conformity with the case of *Gutierrez* v. *Wege*, 145 Cal. 730 [79 Pac. 449], that the defendant had only riparian rights in the waters of Wilson ranch creek, although the waters headed from a spring or marsh on the defendants' lands.

■ The probative facts found do not indicate that the court erred in its finding of the ultimate facts, viz., that the water diverted by the defendants was developed water and that such water in the course of nature would not reach the plaintiffs' lands. The question whether the taking of the developed water in the manner in which it was taken depleted the natural and customary flow which would otherwise reach the plaintiffs' lands in the season of 1933 was also before the court and decided adversely to the plaintiffs. In this respect likewise findings of the probative facts appear sufficiently to support the court's finding on the ultimate facts. The plaintiffs urge that if a continuous flow in Wilson ranch creek would reach their lands were the debris and other obstructions removed, they would be entitled to a decree accordingly apportioning to them a specific amount of such flow. But the court found further that other conditions, including the shortage of rainfall and the drying up of springs, with which the defendants had nothing to do, caused the drying of Wilson ranch creek in May, 1933.

■ The plaintiff contends that pursuant to such cases as *Riverside Water Co.* v. *Sargent*, 112 Cal. 230 [44 Pac. 560], *Steinberger* v. *Meyer*, 130 Cal. 156 [62 Pac. 483], and *Watson* v. *Lawson*, 166 Cal. 235 [135 Pac. 961], the court should have found the specific amount of the water developed by the defendants and to which they were found to be entitled, and the proportion of the natural flow of the stream to which the plaintiffs are entitled, and that the failure so to find has unnecessarily postponed the determination of these questions to future litigation. The answer to this contention is found in

the state of the judgment roll. By its complaint the plaintiff tendered only the issue of wrongful diversion and prayed for an injunction and damages. On this issue the defendants joined. Findings on the issue were against the plaintiffs and judgment entered accordingly. The plaintiffs could not require more. ▮ The fact that the defendants alleged a prescriptive right as a separate defense did not constitute an admission of wrongful diversion. The law permits inconsistent defenses. The further fact that the defendants, by cross-complaint, sought to have their title quieted, did not entitle the plaintiffs to have an adjudication thereon. Since this issue apparently was not pressed by the defendants, the court made no determination thereof. The defendants and not the plaintiffs are the ones aggrieved, if at all, by this omission, and they are not complaining, and the issue of a prescriptive right was resolved against them.

We conclude that the judgment roll here presented is not subject to the objections made to it by the plaintiffs.

The judgment is affirmed.

Seawell, J., Preston, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.